# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LORIE JEAN BROOKHOUSER** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 13-95E** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

### I.  *Introduction*

Pending before this Court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Lori Jean Brookhouser ("Plaintiff" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 et. seq. (2012).  Plaintiff argues that the decision of the administrative law judge ("ALJ") should be reversed and the Commissioner directed to award Plaintiff benefits because the Commissioner committed legal error when evaluating Plaintiff's symptoms and impairments by failing to comply with the requirements of SSR 96-7p and 20 C.F.R. § 404.1529.  The Commissioner's decision was not supported by substantial evidence as required by 42 U.S.C. § 405(g). In the alternative Plaintiff requests that the case be remanded for further hearing and attorney's fees be awarded under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), on the grounds that the Commissioner's action in this case was not substantially justified.

To the contrary, Defendant argues that the decision of the ALJ fully evaluated the opinions of treating, examining, and reviewing physicians as well as other relevant evidence and provided a rationale, supported by substantial evidence for denying SSI benefits to the Claimant and, therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

For the reasons stated below, the Court will deny the Plaintiff's Motion for Summary Judgment and grant the Defendant's Motion for Summary Judgment and affirm the decision of the ALJ.

## II. Procedural History

On February 18, 2010, Plaintiff protectively filed an application for SSI alleging disability beginning April 1, 2009. [ECF No. 7 at 1]. The claim was initially denied on July 1, 2010. Id. On September 3, 2010, Claimant filed a written request for a hearing. Id. A video hearing was held before an Administrative Law Judge ("ALJ") on July 13, 2011. Id. Barbara K. Byers, an impartial vocational expert ("VE"), also appeared during the hearing. (R. at 34). On August 19, 2011, the ALJ, Jeffrey M. Jordan, determined that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. at 34). The ALJ stated that "After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from April 1, 2009, through the date of this decision." (R. at 27). The Plaintiff filed a timely written request for review by the Appeals Council which was denied on February 7, 2013. [ECF No. 8 at 1]. The Commissioner's decision was made final under 42 U.S.C. § 405(g). Id.

While Plaintiff's application for benefits was based upon the following conditions: migraines, cervical and lumbar disorders with both upper and lower extremity radiculopathy,

restless leg syndrome, neuropathy, depression, and obesity, the only medical issues on appeal are the migraine and spinal issues. Therefore, our analysis will cover only the migraine and spinal issues of record.

### III. Medical History

On Plaintiff's Disability Report she states that she is 4'8" tall and weighs 170 pounds. The physical conditions that Plaintiff reported limit her ability to work were: (1) Lower back pain that goes down the leg, arm, and (2) migraine headaches. She says her low back pain began after an auto accident. Id. at 251. (R. at 187). Plaintiff reported her conditions affect the following abilities: Lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, and using hands. She can lift 10-15 pounds, stand for 15 minutes, sit for 15 minutes, squat for 15 seconds till it hurts the back of her legs, reach for 20 seconds, kneel for 10 minutes, bend for 20 seconds until it hurts her back, walk for 10 minutes, she becomes out of breath and hurts stair climbing, she has difficulty using her right hand because of cramping, and the migraines affect her concentration. Id. at 213. Plaintiff says pain is concentrated in her lower back, neck, migraines, right leg, and right arm and hand. Id. at 216. Plaintiff reports that physical therapy made things worse. Id. at 217. Plaintiff reports her pain as 10-out-of-10. Plaintiff states her migraines and back pain have gotten worse as of September 3, 2010, and that it is hard to move around and get out of bed. Id. at 220. She further reported that she stopped working on June 13, 2003 because of these conditions. (R. at 187).

Plaintiff's primary care physician, prescribes the following medications for Plaintiff's conditions: Gabapentin for pain and weakness in arms, Hydrocodone for pain of low back and legs, Carisoprodol a muscle relaxant, Somatriptan for headaches, Hydroxyzine Pam (sleeping pill), Ropinirole HCL for jumping/restless legs, Metoclopramide for acid reflux, Topivamate for

3

headaches, Levothroxine for thyroid, Citalopram HBR for depression, and Ferrex an iron supplement. (R.at. 227). She experiences no side effects from her medications. Id. at 217. Plaintiff reports she sees doctors for her medical conditions.

Dr. Bojewski is Plaintiff's primary care physician who she began seeing in June of 2004. Id. at 191. Dr. Carnes, Dr. Ferretti, and Dr. Habusta were all physicians seen in the emergency room in the year 2008. Id. at 192-93.

A June 28, 2004 report of the MRI performed of the lumbar spine finds mild diffuse degenerative disc disease and sparing at L3-4. The degenerative disc disease is most pronounced at L5-S1 where there are endplate changes. There is a grade I spondylolisthesis of L5 on S1 with bilateral pars defects. There is a moderate bilateral foraminal stenosis. (R. at 227). The diagnosis is degenerative disc disease and spondylolisthesis and spondylolysis, L5-S1. Id.

September 24, 2004 an examination of Plaintiff's left femur in multiple views reveals there is no radiological evidence of fractures or bone destructions. The joint spaces are well preserved. The soft tissues are normal. (R. at 439).

January 26, 2005 x-rays were performed on bilateral knees due to pain. AP and lateral views demonstrate no evidence of fracture, dislocation or bony destruction. There is minimal narrowing of the medial knee joint compartments. No osteophyte formation is seen. The overlying soft tissues are unremarkable. Minimal narrowing of the medial knee joint compartments bilaterally. (R. at 437).

An April 21, 2005 bone density evaluation revealed that the AP Spine (L1-L4) is Osteopenic. (R. at 244).

November 19, 2005 a noncontrast head CT was performed on Plaintiff. The study was compared to an exam dated May 27, 2005. Brain parenchyma was normal in attenuation with normal gray-shite matter differentiation. No intra or extra-axial masses or abnormal fluid collections. No evidence of acute infaret or intracranial hemorrhage. Ventricles and CSF spaces are negative without midline shift. Bony structures and superficial soft tissues are negative. (R. at 430).

A February 21, 2006 study of the right radius and ulna, AP and Lateral revealed there was no evidence of fracture, dislocation or bony erosions. No specific abnormalities. (R. at 429).

Dr. John Kalata, D.O. examined Plaintiff on April 28, 2006 and his examination impressions are as follows: Discogenic disease in lumbar spine with left sciatica, ambulatory dysfunction, spondylolisthesis, spondylolysis, traced lumbar spine, hypothyroidism, migraine cephalgia, insomnia, and left sacroiliac dysfunction. Id. 254-55. Dr. Kalata further reports in a June 14, 2006 letter that Plaintiff has ambulatory dysfunction due to pain in her lower back with radiation to her left leg upon walking. Id. at 250. He states walking with a cane is advisable. Id. He further states that the radicular pain is most likely caused by the diseased lumbar disc at the L4-L5 level, which is affecting her left sciatic nerve. Id. "She had a range of motion that was very diminished in the lower extremities and she had difficulty getting on and off the examination table." Id. at 255.

January 10, 2007 Richard Kocan, M.D. reviewed an MRI of the Plaintiff's lumbar spine and reports there is degenerative disc disease and a grade I spondylolistheses of L5 on S1 without pars defects. The disc is bulging diffusely especially to the left of midline with bilateral moderate foraminal stenosis. No central canal stenosis is seen. No other disc pathology or

malalignment is detected. There is no other canal or foraminal stenosis. Conus medullaris and cauda equine are normal. Id. at 286.

Sylvia M. Ferretti, D.O. of the Bureau of Disability Determination performed a physical examination of the Plaintiff on May 1, 2007 and found that her cervical range was within normal limits, her upper extremity revealed bilateral biceps, brachioradialis and triceps reflexes that were 2/4 and symmetrical. Shoulder, elbow, wrist, hand range of motion were normal, strength bilaterally 5/5 and sensory is intact. Her lower extremity revealed patella and Achilles reflexes were 2/4 and symmetrical. Strength is 5/5. Sensory is intact. Hip, knee, and ankle range of motion were within normal limits. Back range of motion was recorded. Id. at 271.

A July 20, 2007 MRI/MRA report of Plaintiff's back finds that the L5-S1 spondylolisthesis and spondylolysis and foraminal stenosis, is stable from the prior exam of January 10, 2007 and that there are no new abnormalities. The report is signed by Richard Kocan, M.D. Id. at 285.

On October 4, 2007 Plaintiff was seen at Hamot Medical Center Emergency Department for acute musculoskeletal right arm and chest pain. She was discharged with Lortab and ibuprofen prescribed. Id. at 287-95.

A November 3, 2007 study of Plaintiff's right shoulder, right humerus, right radius and ulna, right wrist and right hand show no acute abnormalities. Id. at 322-23.

On November 7, 2007 Dr. Steven Habusta saw Plaintiff for right upper extremity pain, numbness and tingling. On physical examination she has a positive Spurling's test and pain at flexion. Limited range of motion of rotation to the left and side-bending to the left. She has tenderness on palpation on her AC joint as well as tenderness on palpation over the coracoid process and lateral acromion. Dr. Habusta suspects C5-6 radiculopathy and right rotator cuff tear

and scheduled an MRI of the right shoulder and C-spine and scheduled her for an EMG of her right upper extremity. (R. at 310; 488-89).

On November 15, 2007 an MRI of the right shoulder was performed on Plaintiff and no abnormalities were found. (R. at 484). MRI of the cervical spine was performed on November 15, 2007 that found diffuse spondylosis. Disc protrusion at C3-C4, C5-C6, and greatest at C6-C7. The impressions of Russell E. Reichter, M.D. were tendonitis/tendinopathy at the myotendinous junction of the suprspinatus muscle/tendon. There is no evidence of a rotator cuff tear. Degenerative changes at the A-C joint. Id. at 320-21.

December 19, 2007 Plaintiff returned to Dr. Habusta for another follow up visit. The Doctor noted she has a very taught paraspinal musculature of the cervical spine. Range of motion is limited secondary to stiffness and pain. Examination of the right shoulder demonstrates positive impingement signs including Neer's and Hawkins. She has a moderate amount of AC tenderness on the right. Internal rotation and external rotation are symmetrical. MRI demonstrates posterior disc bulge of C5-6, C6-7 with moderate amount of spondylosis throughout the cervical spine. There was also marked loss of normal cervical lordosis on the MRI. MRI of the right shoulder demonstrates moderate amount of AC arthrosis and also some minimal signal change at the supraspinatus tendon proximal to the insertion. (R. at 490). Dr. Habusta instructed Plaintiff to continue with physical therapy and anti-inflammatory medication. He injected her right subacromial space using 1% Lidocaine 6 ccs with 2ccs of ¼% Marcaine and 2 ccs of 40 mgs of Depo-Medrol. Id.

Plaintiff only attended one physical therapy session on December 28, 2007 where she was assessed by Kyle Kelley as demonstrating with pain primarily in the right scapular region due to what appears to be some postural issues resulting in tightness of the pectoralis region an

dover-stretching of the scapular muscles resulting in right shoulder pain. Goals were set to demonstrate a +4/5 triceps strength, a reduction of subjective complaints by 50% in her pain, to demonstrate an increase in her grip strength by 10 pounds or greater, patient to demonstrate 0 complaints of cervical range of motion, and patient to be independent with a home exercise program. Physical therapy to continue 2 to 3 times a week for 4 weeks. Pain relief modalities included in therapy. Id. at 317.

A January 7, 2008 Saint Vincent Neurosurgery report states that Plaintiff complains of neck and right upper extremity pain for about three to four months period time. Dr. William Diefenbach recommends physical therapy before any surgical intervention. Id. at 297-98.

Dr. Ferretti examined Plaintiff on February 5, 2008 performed an EMG for right forearm pain with weakness and tingling in her right hand for the past 4 months. Dr. Ferrett diagnosis Plaintiff with chronic right C6 nerve root irritation and recommends conservative treatment and physical therapy. Id. at 300.

Dr. Habusta saw Plaintiff on February 27, 2008 and assesses that Plaintiff has C-spine radiculopathy particularly in right C6 mild right shoulder impingement syndrome. Dr. Habusta says there is nothing to do from a surgical standpoint and provides the same recommendations as Dr. Ferretti and Dr. Diefenbach. Id. at 306-07. Dr. Habusta further reported that Plaintiff's condition was essentially the same with a limited range of motion of the right upper extremity and slightly reduced strength in deltoid, biceps, triceps, wrist flexion and extension. MRI of the right shoulder demonstrated moderate ACJ arthritis and minimal signal change at the supraspinatus tendon proximal to the insertion. Dr. Habusta's assessment was C-spine radiculopathy particularly right C6 and mild right shoulder impingement syndrome. The Doctor states Plaintiff has elected not to pursue physical therapy that was recommended by three

doctors. Nor has she filled the prescription for her C-spine traction unit. Doctor says there is very little they can do for her except medicine to alleviate her symptoms. (R. at 486-87).

An MRI was performed on November 7, 2008 of the Cervical Spine. Images were taken of AP, lateral and both oblique views with odontoid view. The result of the images was spondylosis at C5-6 and C6-7. An MRI of the cervical spine was compared with studies performed on November 15, 2007. T1 and T2 weighted sagittal and axial images with gradient recalled sagittal images obtained. The results were diffuse spondylosis, central disk protrusion at C4-5, C5-6 and greatest at C6-7. There are degenerative changes with osteophyte formation at C5-6 and greater at C6-7. Radiologist was Russell E. Reichter, M.D. Id. at 311-12. MRI of the cervical spine was compared to studies performed on November 15, 2007 (with the same results (R. at 484)) and impressions were diffuse spondylosis and central disk protrusion at C4-5, C5-6 and greatest at C6-7. Id. Dr. Steven Habusta, D.O. was the attending physician. An X-ray of Plaintiff's arm was taken on November 8, 2008. Id. at 167.

On December 3, 2008 Plaintiff was seen by pain management specialist Paul Carnes, MD for chronic neck pain radiating to the right upper extremity, and chronic low back pain radiating to the right lower extremity. A cervical MRI showed cervical spondylosis with degenerative disc disease, but no disc herniation. On examination, Plaintiff's vital signs, HEENT, lungs, heart, abdomen, and extremities were normal. Cervical range of motion was slightly decreased with some paracervical tenderness and tenderness over the greater occipital nerve and the suprascapular nerves. Straight leg raising was negative. Patrick's maneuver was negative. There was some lumbosacral tenderness. Strength and sensation was normal. Deep tendon reflexes were symmetrical. Dr. Carnes initiated a series of cervical epidural steroid injections. (R. at 447).

On January 13, 2009 Plaintiff underwent a procedure for the administration of cervical epidural anesthetic and steroid with contrast under fluoroscopy for chronic neck pain, secondary to cervical disc degeneration. Id. at 332. The same procedure was performed on February 3, 2009. Id. at 331. Dr. Paul P. Carnes performed the pain management procedures. Id. at 332-34.

On June 14, 2010 Plaintiff was examined by Dr. John C. Kalata, D.O. Patient reported she has migraine headaches sometimes daily and she has lower back and right leg pain. Plaintiff takes a Topomax 100 mg tablet twice a day for the migraines and Vicodin ES and Soma for the back and leg pain. Plaintiff also complains of neck pain that radiates down to her right arm causing numbness and pain. (R. at 463).[1] The doctor noted limited motion of the neck to all spheres, (R. at 466), full range of motion of upper and lower extremities (R. at 467), and back reveals tenderness in the lumbar area radiating down towards her left leg. Id. The doctor reported Plaintiff can barely toe walk or heel walk and she could not really squat. Id. Dr. Kalata's examination impressions are: (1) Migraine cephalgia; (2) Right arm neuropathy; (3) Cervical discogenic disease with bulging disks; (4) Spondylosis of cervical spine; (5) Radiculopathy, right arm; (6) Discgenic disease, lumbar spine; (7) Hypothyroidism; (8) Restless leg syndrome; (9) GERD; (10) Insomnia; (11) Right C6 nerve neuropathy; (12) Central disk protrusion at the C4 and 5 level, C5 and 6 level, and greatest at C6 and C7 level. Id.

On August 10, 2010 Plaintiff went to St. Vincent Health Center with low back pain and migraine pain and was diagnosed with fatigue and weakness and discharged with care instructions. (R. at 529).

---

[1] There appears to be a typographical errors on page 466 of the record where the doctor describes the Plaintiff as a 27-year old male. This possibly calls into suspect other information provided in the same report.

On September 26, 2010 Plaintiff went to the Emergency Department at St. Vincent Health Center for low back pain and she was diagnosed with Radiculopathy and discharged with instructions for care. (R. at 521).

On September 30, 2010 Plaintiff went to the Emergency Department at St. Vincent Health Center with lower back pain and was educated in care for the pain and discharged. (R. at 515).

On October 14, 2010 an MRI of Lumbar Spine without contrast was performed due to lower back pain and left leg pain with numbness. Findings were minimal spondylolisthesis of L5 on S1 secondary to degenerative disc and joint disease at this level. There is degenerative disc disease throughout the lumbar spine. (R. at 567). On the same date the Plaintiff had images taken of her lumbar spine in three views. The findings were degenerative disc and joint disease at L5-S1 and L4-5. (R. at 568).

November 1, 2010 Plaintiff attended physical therapy for low back pain and lower extremity numbness. She was assessed as having low back pain exacerbated by the fact that she has excessive weakness throughout her lower extremities. (R. at 587). Plan for the Plaintiff was to increase strength within four weeks. Plaintiff was to have physical therapy 2-3 times a week for four weeks. Id.

A November 24, 2010 letter from Millcreek Community Hospital to Bryant Bojewski, D.O. states that due to lack of attendance Plaintiff was discharged from physical therapy. (R. at 585).

On December 13, 2010 Plaintiff attempted suicide with an overdose of Ambien. She became nauseated and vomited. She was seen at the St. Vincent Health Center. (R. at 536).

*IV. Summary of Testimony*

Plaintiff lives with her fiancée, daughter, son and grandson. (R. at 208). In her Disability Report her description of her daily activities are as follows:

I wake the boys up for school in the mornings . . . [The boys] get ready for school and one of the three of us drive them to school. Come home if it's me then climb up the stairs hurts my back so I sit awhile, stairs are hard on my legs and back. I also get dizzy and fell [sic] like am about to fall. I take my medications because if I don't take my migraine medication I will get [a] headache within an hour. My headaches/migraines last about ¾ of the day. I need to be in a dark room where it's quiet [sic] cold towel or hot towel whatever one work at that time. You try not to cry because that just makes it worse – you get sharp pains at the top of your head that feels like someone has a knife in it. Id.

Plaintiff reports working as a bank teller prior to the onset of her alleged disability from April of 1999 to June of 2003. Subsequent to being a bank teller, Plaintiff babysat for her grandson in 2005. (R. at 196). Requirements of the job babysitting her grandson included feeding him, changing him, playing with him and making sure he was safe. (R. at 197). Plaintiff would have to walk, stand, sit, stoop, kneel, crouch, crawl, handle, grab or grasp big objects and small objects, reach and lift and carry the baby. Id.

In the medical source statement filled out on April 28, 2006, Dr. Kalata reports that Plaintiff could occasionally carry and left 10 pounds and frequently carry and lift 2-3 pounds. Id. at 256. He said she could stand or walk an hour or less a day. Id. He said she could sit for 3 hours. Id. With regard to pushing and pulling, Plaintiff is limited in lower extremity due to chronic low back pain. Id. Plaintiff is unable to stoop or crouch and can occasionally bend, kneel, balance or climb. Id. at 259. She is limited in reaching. Id. Finally, her low back pain inhibits her with heights, moving machinery, and vibration. Id.

Plaintiff's June 20, 2006 Physical Residual Functional Capacity (RFC) Assessment performed by V. Rama Kumar, MD, provides the primary diagnosis of Dege disc disease of L-spine and hypothyroidism with other alleged impairments of migraines, spondylolisthesis, spondylolysis, and minimal arthritis of the knees. Id. at 260. Plaintiff's limitations as noted here indicate that she can occasionally lift 20 pounds, frequently lift 10 pounds and can stand, walk or sit for about 6 hours in an 8-hour work day. Id. at 261. She has an unlimited capacity to push or

pull. Id. The report further indicates that Plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl. Id. at 262. No manipulative, visual, communicative, or environmental limitations were cited. Id. The narrative of the RFC summarizes Plaintiff's medical history, treatment and complaints and says the following: "The record reveals that the treatment has generally been successful in controlling those symptoms. She does not attend physical therapy. She does not require an assistive device to ambulate. Additionally, she does not use a Tens unit . . . The medical records reveal that the medications have been relatively effective in controlling her symptoms." Id. at 265. Dr. Kumar goes on to state, "Of greatest significance in determining the credibility of the claimant's statements regarding symptoms and their effects on her functioning was the type of treatment she received." Dr. Kumar found Plaintiff to be partially credible. Id. at 266. Dr. Kumar addresses the discrepancies between the RFC and Dr. Kalata (misspelled in the RFC as "Alata"). Dr. Kumar finds that Dr. Kalata overestimates the severity of Plaintiff's functional restrictions based on the totality of evidence in the file and because it is not consistent with all of the medical and non-medical evidence in the claims folder, it is less persuasive and is given appropriate weight. Id.

Dr. Ferretti's evaluation stated Plaintiff could frequently lift and carry up to 10 pounds and occasionally lift 20 pounds. Plaintiff can stand and walk 8 hours or more a day (1 hour at a time and changing position frequently). Plaintiff can also sit/stand at her option for 8 hours a day. Plaintiff has limited lower extremity due to spondylithesis and spondylosis. Id. at 276. Dr. Ferretti states that Plaintiff has no postural limitations and is only physically limited in handling due to forearm pain. Id. at 277. Environmental restrictions include poor ventilation, heights, and moving machinery. Id.

On June 13, 2007 Dr. Kilip S. Kar performed another RFC. Dr. Kar reports Plaintiff can occasionally lift or carry 20 pounds and frequently lift 10 pounds. She can stand or walk with normal break about 6 hours in an 8-hour work day and her push/pull capabilities are unlimited. Id. at 279. Dr. Kar reports that Plaintiff can occasionally perform all postural positions such as climbing, balancing, stooping, kneeling, crouching and crawling. Id. at 280. The doctor finds no other limitations. Dr. Kar found the Plaintiff's statements to be partially credible. Id. at 283. Dr. Kar acknowledges the consideration of Kr. Ferretti's evaluation in the RFC determinations.

On March 5, 2009 another RFC was performed by Lorraine Prach. Ms. Prach found Plaintiff to be able to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. She can sit for about 6 hours in an 8-hour work day and is unlimited in push/pull activity. There are no limitations reported in postural activity, manipulative activity, visual activity, or communicative or environmental activity. Id. at 336-39. Plaintiff alleges disability due to back pain, neck pain and arm problems and states that these symptoms result in limitations in performing at a consistent pace. The medical evidence establishes a medically determinable impairment of C5-C6 Radiculopathy. Ms. Prach determines Plaintiff to be partially credible in assessing her statements regarding symptoms and their effects on function and the medical history evidence. Id. at 340.

On March 31, 2010 another RFC Assessment was completed by Paul Fox under a primary diagnosis of cervical spondylosis. Fox determined Plaintiff could occasionally lift or carry 20 pounds and could frequently lift or carry 10 pounds. He said she could stand or walk with normal breaks for about 6-8 hours a day and she could sit for the same amount of time. He also determined she has unlimited push and pull abilities. According to this RFC, Plaintiff could frequently balance, stoop, and crouch and occasionally climb, kneel, and crawl. She has no

manipulative limitations, no visual limitations, no communicative limitations, no environmental limitations. (R. at 442-446).

The evaluator, in assessing the Plaintiff's credibility says the following:

The claimant has described daily activities that are significantly limited. This is consistent with the limitations indicated by other evidence in this case. She received treatment from a specialist for her Cervical Spondylosis. Furthermore, she has received various forms of treatment for the alleged symptoms. The record reveals that the treatment has generally been successful in controlling those symptoms. Of critical importance in determining the credibility of the claimant's statements regarding symptoms and their effects on her functioning were her medical history, type of treatment she received, her response to the treatment she received and reported observations of the claimant in the file. Based on the evidence of record, the claimant's statements are found to be partially credible. (R. at 447-48).

Also on March 31, 2010 a psychiatric assessment was performed by Edward Jonas, Ph.D. He found Plaintiff's mental impairments not severe and categorized her as having "Affective Disorders." Dr. Jonas notes a medically determinable impairment of depression is present that does not precisely satisfy the diagnostic criteria. (R. at 450, 453). The evaluator makes a final notation stating, "The claimant is 44 years old and suffers from depression. This was diagnosed by her PCP, Bryant Bojewski, D.O. She takes citalopram, which was prescribed by Dr. Bojewski, and it completely controls symptoms. The claimant has no mental health inpatient or outpatient treatment. Based on the evidence of record, the claimant's statements are found to be partially credible." (R. at 462).

On June 14, 2010, Dr. Kalata reported that Plaintiff can never crouch due to lower back pain and can occasionally bend, kneel, stoop, balance and climb. (R. at 469). He also noted her arm pain inhibits her reading, handling, fingering, and feeling. Id. Finally, he says her neck and back pain cause her to have restrictions in the areas of heights, moving machinery, vibration, temperature extremes, wetness, dust, noise, fumes, and humidity. Id. According to Dr. Kalata's report Plaintiff can frequently lift 2-3 pounds and only occasionally can lift 10 pounds. (R. at

470). She can only walk for an hour or less and she is limited in upper extremity in pushing and pulling. Id.

Another RFC Assessment was performed by Gennafer Shaw on July 1, 2010. The Plaintiff's primary diagnosis in this report was Migraine Cephalgia with a secondary diagnosis of right arm neuropathy and radiculopathy. Other alleged impairments are Plaintiff's disc disease and restless leg syndrome and GERD. This report states the following: Plaintiff can occasionally lift 10 pounds and can frequently lift 10 pounds. She can stand or walk at least 2 hours in an 8-hour workday. She can sit for about 6 hours in an 8-hour work day. She has unlimited push and pull ability. She only has occasional postural limitations and no manipulative, visual, or communicative limitations. The only environmental limitation is to avoid concentrated exposure to machinery and heights. (R. at 473-477).

The claimant has described daily activities that are significantly limited. This is partially consistent with the limitations indicated by other evidence in this case. She received treatment from a specialist for her impairments. Furthermore she does not require an assistive device to ambulate. She is prescribed [medicine] for her pain . . . Based on the evidence of record, the claimant's statements are found to be partially credible." Id. at 478-79.

Claimant's initial requests for disability insurance benefits were denied. There was a July 13, 2011 hearing on the matter for which an August 19, 2011 decision was issued by Administrative Law Judge, Jeffrey M. Jordan, once again, denying Plaintiff benefits. The ALJ determined (1) that the Plaintiff met the insured status requirements of the Social Security Act; (2) that she has not engaged in substantial activity since April 1, 2009; (3) that she has the following impairments: disorders of the back; migraines; restless leg syndrome; neuropathy; and obesity; (4) the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

and (5) that after careful consideration of the entire record, the ALJ finds that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (R. at 28-30). The ALJ presented to the Vocational Expert (VE), Barbara K. Byers the following limitations:

- Sedentary work;
- Lift, carry, push, and pull up to 10 pounds occasionally from waist to chest level;
- Stand and walk less than one hour within an eight hour workday;
- Sit about seven hours in an eight hour workday;
- Avoid crawling, kneeling, and climbing, but can perform other postural movements on an occasional basis;
- Avoid constant and repetitive fine and gross manipulating;
- Limited to simple, repetitive, low stress tasks;
- Avoid working around hazards;
- Avoid concentrating exposure to respiratory irritants, extreme temperatures, and humidity; and
- Avoid constant and repetitive reading and turning of the neck. (R. at 21).

The ALJ provided the VE with the most conservative restrictions even though some RFC evaluators thought Plaintiff was capable of more. The VE suggested that Plaintiff can work as a food and beverage order clerk, where there are 1,000 jobs in the Pennsylvania economy, and as a charge account clerk, where there are 2,000 jobs in the economy. (R. at 34).

It is Plaintiff's position that the ALJ's determination that she could work in occupations with jobs existing in significant numbers in the national economy was not supported by substantial evidence. (R. at 20-21). Further, Plaintiff contends that the two job possibilities that the VE identified as available to the Plaintiff, were actually not possible due to the Plaintiff's short stature, nor were they available in a location geographically available to the Plaintiff who resides in a less populated area in Pennsylvania. (R. at 22).

### V. Standard of Review

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This Court must determine

whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F) (2012).

### VI. Discussion

Under SSA, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 416(i)(l); 423(d)(1)(A); 20 C.F.R. § 404.1505 (2012). A person is unable to engage in substantial activity when he:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering her residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v); see also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). In this case, the Commissioner uses the sequential evaluation process and determines at step (5) that the Plaintiff has not met her burden of proof that she cannot work in some capacity in the national economy. Therefore, because the Plaintiff was determined able to perform work that exists in significant numbers in the national economy, she was determined ineligible for benefits by the ALJ. (R. at 34).

In support of her motion for summary judgment, Plaintiff generally argues that the ALJ failed to comply with SSR 96-7p and 20 C.F.R. § 404.1529 because (1) her decision does not

contain specific reasons for his finding of partial credibility for Plaintiff, (2) her findings were not supported by the evidence in the case record, and (3) her decision is not sufficiently specific to make clear to the Court the weight the adjudicator gave to the Plaintiff's statements and the reasons for that weight. [ECF No. 8 at 3]. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In response, Defendant contends that the record supports that Plaintiff can perform light work and a reduced range of sedentary work. The Commissioner supports her finding of partial credibility for Plaintiff by comparing Plaintiff's complaints to medical evidence of record and finds the record does not support the claims. There was no further medical testimony on the record that contested these findings. The Commissioner found substantial evidence – defined as less than a preponderance and more than a mere scintilla – supports the decision of the ALJ that Plaintiff could perform a reduced range of sedentary work. [ECF No. 10 at 1-2]. We agree with the Commissioner that the record supports a finding that Plaintiff is not disabled and can perform a range of sedentary work. Further, even though the examples of possible jobs provided by the VE that Plaintiff could perform *may* not be available in the certain geographic range close to Plaintiff, as stated above, the geographic availability of identified work is not of consequence in making a determination of *ability* to work.

The claimant bears the burden of proving not only that she has an impairment expected to result in death or last continuously for a year, but also that it is so severe that it prevents her from performing any work  See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Bowen v. Yuckert, 482 U.S. 137, 147 (1987).  The Commissioner evaluates a disability claim by considering whether

the claimant (1) is working; (2) has a severe impairment; (3) has a listed impairment; (4) can return to her past work; and (5) can perform other work. See 20 C.F.R. §§ 404.1520, 416.920. As stated above, in the Commissioner's analysis she reached the question of whether Plaintiff could perform her past work or any other work in the economy. Plaintiff bears the burden of proving that her RFC or limitations are that which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336 (1976). Moreover, the ALJ is not required to uncritically accept Plaintiff's complaints. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ, as fact finder, has the sole responsibility to weight a claimant's complaints about her symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

In this case we do not believe the Plaintiff has met her burden of proof that she has a disability so severe it prevents her from performing any work. Defendant's recitation of the medical record is not persuasive without further medical testimony or evidence that supports her claims and a determination that Plaintiff is unable to work. The Court understands that the Plaintiff has several diagnoses of disc disease and migraine headaches, however, the record indicates that the Plaintiff's symptoms are treatable. Plaintiff herself indicated that her migraine medicine is effective with no side-effects. Further, more than one doctor advised the Plaintiff to pursue physical therapy to address her back pain symptoms and Plaintiff did not exhaust this remedy. Even with her existing pain levels, Plaintiff was determined able to work and only partially credible in multiple RFCs by various RFC reviewers throughout her medical history. Most of the RFC reviewers found Plaintiff to be even more capable than what the ALJ presented to the VE. Furthermore, the multitude of RFCs were all consistent with one another in their determination of limitations for Plaintiff. Even the most limited report by Dr. Kalata found

Plaintiff able to perform some work. The Court did not find any evidence on the record from a medical professional that determined Plaintiff unable to work even though the medical record reflected several diagnosis for her pain. A diagnosis of a malady without a determination or indication from some supporting medical review that Plaintiff cannot work will not serve to make Plaintiff eligible for disability benefits.

## VII.    *Conclusion*

For the foregoing reasons, we conclude that there is substantial evidence existing in the record to support the Commissioner's decision that Plaintiff is not disabled, and therefore, the Plaintiff's Motion for Summary Judgment is denied. The Defendant's Motion for Summary Judgment is granted and the decision of the ALJ is affirmed.

An appropriate order will be entered.


Date:  December 19, 2013

*Maurice B. Cohill Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge


cc:    counsel of record